SAMUEL FLIER & another *vs.* ALBERT B. RUBIN & another.

Hampden. April 10, 1947. — June 11, 1947.

Present: FIELD, C.J., QUA, DOLAN, WILKINS, & SPALDING, JJ.

*Contract,* For sale of real estate, Performance and breach, Construction. *Equity Pleading and Practice,* Appeal.

Under a contract for sale of real estate requiring the prospective seller to convey "a good and clear title . . . free from all encumbrances" and providing that if he should be unable to do so any payments made under the contract should be refunded "and all other obligations of either party hereunto shall cease," the prospective seller would be excused from performance upon proof of an outstanding tax title or other defect rendering him unable so to convey, even if the prospective purchaser were willing to take title subject to such defect and to pay the full purchase price therefor.

Upon an appeal by the defendant from a decree for the plaintiff in a suit in equity, the case was remanded for determination of a fact, evidence of which had been offered by the defendant and excluded and which, if proved, would have been a conclusive defence.

BILL IN EQUITY, filed in the Superior Court on July 16, 1946.

The defendants appealed from a final decree entered after hearing by *Donnelly*, J.

In this court the case was submitted on briefs.

*E. S. Searle, S. Weltman & J. Cohen,* for the defendants.

*P. E. Saks,* for the plaintiffs.

QUA, J. This is a bill for specific performance of the defendants' contract to convey to the plaintiffs certain real estate in Springfield.

The contract bound the defendants to convey "a good and clear title . . . free from all encumbrances," with certain exceptions with which we need not concern ourselves on this appeal. It contained this further clause, "If the party of the first part [defendants] shall be unable to give title or to make conveyance as above stipulated, any payments made under this agreement shall be refunded, and all other obligations of either party hereunto shall cease . . . ." The case turns upon the clause last quoted.

At the hearing the defendants took the position that they were excused from conveying because they were unable to give a good title free from encumbrances, while the plaintiffs asserted that the defects in the title were imaginary and not real, offered to take the title subject to any defects and to pay the full contract price, and insisted upon a decree permitting them to do so. No evidence bearing upon the state of the title was introduced by either side, but the judge allowed the defendants to make an offer of proof which included the following: (1) that in 1895 one Diodate Swan died owning the property, and although original administration was taken out at that time, and an administrator de bonis non was appointed in 1918, no final account was ever filed, and "no inheritance tax was ever filed"; (2) that after the death of one Wilbur Swan, Mary C. Swan gave a deed of part of the property, dated in 1921, that Wilbur Swan left a will in which were certain pecuniary legacies, that no final account was filed, "so that this real estate still remains liable for the expenses of administration . . . [in the estate of Wilbur Swan] and could be taken because those legacies are not paid," and that the legacies were not paid "as far as the record goes"; (3) that

there is a "tax deed outstanding" which ran to one Guthrie, who was not at that time a holder of the title, and which "still remains on the records undischarged"; and (4) that the property was zoned in a "residence A" district. The defendants further offered to show that "all of the encumbrances" mentioned in their offer of proof were in existence before they acquired title to the property. Upon the making of the offer of proof the judge ruled in favor of the plaintiffs and entered a decree for a conveyance subject to the alleged defects. The defendants appealed.

The interpretation of the clause last above quoted from the contract is well settled in this Commonwealth. It "means that if it turns out that without fault on the part of the defendants subsequent to the execution of the contract they have a defective title, then, after refunding payments made, all obligations of both parties shall cease. The language is plain and unequivocal. It does not make the duties and responsibilities of either party in that event depend upon the option of the other, but by apt language puts an end to the binding force of the contract as respects either party." *Old Colony Trust Co.* v. *Chauncey*, 214 Mass. 271, at page 273. To the same effect are *Lewenberg* v. *Johnson*, 224 Mass. 297, *Buckley* v. *Meer*, 251 Mass. 23, *Drapen* v. *Foley*, 258 Mass. 167, *Margolis* v. *Tarutz*, 265 Mass. 540, 543–544, *J. J. Newberry Co.* v. *Shannon*, 268 Mass. 116, 118, and *New York, New Haven & Hartford Railroad* v. *Butter*, 276 Mass. 236. Because of the provision in the contract that if the defendants should be unable to give title as stipulated the obligations of "either party" should cease, the case is distinguishable from *Dennett* v. *Norwood Housing Association, Inc.* 241 Mass. 516, and from *Parkhurst* v. *Maynard*, 285 Mass. 59, and *Moran* v. *Manning*, 306 Mass. 404, 409, cited by the plaintiffs. The distinction is pointed out in *Parkhurst* v. *Maynard*, 285 Mass. 59, at pages 63–64, as well as in *Buckley* v. *Meer*, 251 Mass. 23, at page 26. The defendants therefore have a right to be entirely excused from performance if they can prove a defect in the title existing before the contract was made which prevents them from conveying a good and clear

title free from all encumbrances as agreed. This is true even though the plaintiffs are willing to take title subject to the defect. *Buckley* v. *Meer*, 251 Mass. 23, 26. And with respect to such defect the defendants are under no obligation to make the title any better than it is. *Old Colony Trust Co.* v. *Chauncey*, 214 Mass. 271, 273–274. *Drapen* v. *Foley*, 258 Mass. 167, 169.

The defendants' offer of proof seems to have been made on the spur of the moment at the hearing and is lacking in completeness and perhaps in accuracy. It is alleged that the defects existed when the contract was made. Whether the offer went far enough to disclose the actual existence of defects or encumbrances arising out of possible taxes, legacies, or charges of administration in the estates of deceased title holders we need not determine. See *Chauncey* v. *Leominster*, 172 Mass. 340, 347–348; *Cawley* v. *Jean*, 189 Mass. 220, 226–227; *Costello* v. *Tasker*, 227 Mass. 220, 223; *Dyer* v. *Scott*, 253 Mass. 430; *Mahoney* v. *Nollman*, 309 Mass. 522; G. L. (Ter. Ed.) c. 202, § 20, as appearing in St. 1933, c. 221, § 5. Neither need we determine whether a zoning regulation is a defect in and encumbrance upon a private title or simply a part of the law of the land (see *Daniell* v. *Shaw*, 166 Mass. 582; *French* v. *Folsom*, 181 Mass. 483, 485), or whether if it is a defect or encumbrance it is a restriction "of record," subject to which the plaintiffs agreed to take the property. See *Dyer* v. *Scott*, 253 Mass. 430, 431–432; *Oliver* v. *Poulos*, 312 Mass. 188, 192–193. But there remains the offer to prove a "tax deed outstanding." We think this offer should fairly be interpreted as an offer to show an existing valid tax title in a third person which has never been redeemed. (The decree recites a tax deed dated September 21, 1936.) Such a tax title would remain, until redeemed or foreclosed, a defect in the title and an encumbrance which would render the defendants "unable to give title or to make conveyance as . . . stipulated" (G. L. [Ter. Ed.] c. 60, § 45, as amended by St. 1938, c. 339, § 1), and would excuse them from performing the contract. It may be that if the evidence had been heard it would have appeared that such a tax title no longer

remained outstanding, but we do not see how the defend-. ants could properly be prevented from attempting to prove that it did still remain. The case must be retried.

> *Decree reversed with costs of appeal*
> *to the defendants.*